COMMUNITY ACTION FOR GREATER MIDDLESEX
COUNTY, INC. *v.* AMERICAN ALLIANCE
INSURANCE COMPANY
(SC 16131)

McDonald, C. J., and Borden, Norcott, Palmer and Vertefeuille, Js.

Argued March 15—officially released August 29, 2000

*John W. Lemega,* with whom, on the brief, was *Michael S. Taylor,* for the appellant (plaintiff).

*Linda L. Morkan,* with whom, on the brief, was *Theodore J. Tucci,* for the appellee (defendant).

*Opinion*

PALMER, J. The principal issue raised by this certified appeal is whether the defendant insurer, American Alliance Insurance Company, had a duty to defend its insured, the plaintiff, Community Action for Greater Middlesex County, Inc., in a negligence action brought against the plaintiff on behalf of a child who alleged that she had been sexually abused and sexually molested by three other children while the four children were attending a preschool program operated by the plaintiff. The defendant contends that it had no duty to defend the plaintiff in light of an exclusion in its insurance policy for abuse or molestation. We agree with the defendant.

The decision of the Appellate Court sets forth the relevant facts and procedural history. "[The plaintiff] initiated suit against [the defendant] for breach of an insurance contract. The allegations asserted in the complaint include the following. [The plaintiff], a federally funded agency, provides a preschool training program. [The defendant] is the general liability insurance carrier for [the plaintiff] under a policy purchased from [the defendant] by [the plaintiff]. The parent and next friend of a six year old child[1] [Edna Poe][2] brought suit against [the plaintiff] alleging that while [Poe] was enrolled in the program, she was sexually molested [and sexually abused][3] by three boys who were in her class.[4] [In partic-

---

[1] At the time of the alleged acts of sexual abuse and molestation, the child was approximately four and one-half years old.

[2] Edna Poe is a pseudonym given to the six year old child to protect her privacy.

[3] Poe's complaint twice characterized the conduct of the three boys as sexual abuse and twice characterized their conduct as sexual molestation.

[4] "The suit alleges that [Poe] suffered emotional trauma as a result of one or more of six separate acts of negligence on the part of [the plaintiff]: failure (1) to supervise, (2) to investigate, (3) to train teachers, (4) to hire qualified teachers, (5) to report allegations of sexual abuse and (6) to keep

ular, the suit alleges that, on two separate occasions, the three boys had "grabbed and fondled" Poe's vagina.][5]

"Pursuant to the insurance contract, [the defendant] agreed to defend and indemnify [the plaintiff] against any action seeking damages due to bodily injury. Upon notice of the litigation brought on behalf of [Poe], [the plaintiff] notified [the defendant] and demanded that [the defendant] defend and indemnify it against the suit. [The defendant] declined to defend or to indemnify [the plaintiff], relying on the abuse or molestation exclusion contained in the insurance policy. Following its successful defense of [Poe's case], [the plaintiff] sought reimbursement from [the defendant] for all the expenses incurred, plus interest. [The defendant] refused the demand and [the plaintiff] filed a complaint alleging that [the defendant] breached the insurance contract by its failure to provide a defense.

"[The defendant] responded to the complaint, admitting certain allegations and denying others, and raised a special defense. Specifically, [the defendant] asserted that the insurance policy issued to [the plaintiff] contained an express exclusion for abuse or molestation,[6]

[Poe] safe from harm." *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 52 Conn. App. 449, 450 n.2, 727 A.2d 734 (1999).

[5] Poe also alleged that the second incident of sexual molestation had occurred after Poe's mother had notified the plaintiff of the first such incident.

[6] The policy endorsement containing the abuse or molestation exclusion provides: "This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to bodily injury, property damage, advertising injury or personal injury arising out of:

(a) the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

(b) the negligent:

(i) employment;

(ii) investigation;

(iii) supervision;

(iv) reporting to the proper authorities, or failure to so report; or

the provisions of which apply to the claims raised by [Poe] against [the plaintiff], and, therefore, [the defendant] did not owe [the plaintiff] any duty to defend or any other contractual obligation under the applicable policy. The record does not contain a reply to this special defense.

"In March, 1997, both parties filed motions for summary judgment . . . . Following oral argument, the trial court reserved decision and then, by notice dated May 14, 1997, notified the parties of its ruling in favor of [the defendant]. The trial court did not provide a memorandum of decision to explain the basis for its decision. Rather, the court simply signed the order, indicated that [the plaintiff's] motion for summary judgment was denied and that [the defendant's] motion for summary judgment was granted, and wrote on the order, 'See *Middlesex Mutual Assurance Co.* v. *Rand,* Superior Court, [judicial district of Middlesex, Docket No. CV95-76644] (April 4, 1996) [16 Conn. L. Rptr. 414] (*Stanley, J.*).' " *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.,* 52 Conn. App. 449, 450–52, 727 A.2d 734 (1999).

The plaintiff appealed from the judgment of the trial court to the Appellate Court, claiming that the trial court improperly had determined that the defendant, as opposed to the plaintiff, was entitled to summary judgment. The Appellate Court concluded that the record was inadequate for its review of the plaintiff's claim because the plaintiff had failed to provide that court with a memorandum of decision or a signed transcript of an oral ruling by the trial court explaining its decision to grant the defendant's motion for summary

(v) retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) above." (Internal quotation marks omitted.) *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.,* 52 Conn. App. 449, 451 n.3, 727 A.2d 734 (1999).

judgment. Id., 452. The Appellate Court therefore affirmed the judgment of the trial court without reaching the merits of the plaintiff's claim. Id., 454.

We granted the plaintiff's petition for certification to appeal, limited to the following issues: "1. Did the Appellate Court properly conclude that the record was not sufficient for review of the plaintiff's claims? [And] 2. [i]f the answer to [the first] question . . . is no, did the trial court properly grant the defendant's and deny the plaintiff's motions for summary judgment?" *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 249 Conn. 924, 733 A.2d 846 (1999). We conclude that the Appellate Court improperly determined that the record was inadequate for its review of the plaintiff's claim. We also conclude, however, that the trial court properly granted the defendant's motion for summary judgment. Accordingly, we affirm the judgment of the Appellate Court, albeit on a ground not reached by that court.

I

The plaintiff first maintains that the record was adequate for the Appellate Court's review of the plaintiff's claim that the trial court improperly had rendered summary judgment for the defendant rather than the plaintiff. We agree.

The following facts are relevant to our determination of this claim. The trial court endorsed the last page of the defendant's motion for summary judgment as follows: "Granted . . . . See *Middlesex Mutual Assurance Co.* v. *Rand*, [supra, 16 Conn. L. Rptr. 414]."[7] The trial court then rendered judgment in accordance with this ruling. The plaintiff did not seek an articulation of the court's ruling.

---

[7] The trial court denied the plaintiff's motion for summary judgment in precisely the same manner.

In refusing to review the merits of the plaintiff's claim, the Appellate Court stated: "The duty to provide [the Appellate] [C]ourt with a record adequate for review rests with the appellant.[8] . . . In this case, the record is inadequate for review because we have not been provided with either a written memorandum of decision or a transcribed copy of an oral decision signed by the trial court stating its reasons for its decision to resolve the insurance policy coverage issue against [the plaintiff] and to deny [the plaintiff's] motion for summary judgment. See Practice Book § 64-1 (a)[9] . . . ." *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, supra, 52 Conn. App. 452.

The Appellate Court further explained that, "[w]hile the trial court wrote on its order, '[s]ee *Middlesex Mutual Assurance Co.* v. *Rand*,' that decision does not inform us as to the trial court's reasoning in the present case. *Middlesex Mutual Assurance Co.* involved an exclusion for 'bodily injury or property damage which is expected or intended by the insured.' In *Middlesex*

---

[8] See Practice Book § 61-10 ("It is the responsibility of the appellant to provide an adequate record for review. The appellant shall determine whether the entire trial court record is complete, correct and otherwise perfected for presentation on appeal.").

[9] Practice Book § 64-1 (a) provides: "The court shall state its decision either orally or in writing, in all of the following: (1) in rendering judgments in trials to the court in civil and criminal matters, including rulings regarding motions for stay of executions, (2) in ruling on aggravating and mitigating factors in capital penalty hearings conducted to the court, (3) in ruling on motions to dismiss under Section 41-8, (4) in ruling on motions to suppress under Section 41-12, (5) in granting a motion to set aside a verdict under Section 16-35, and (6) in making any other rulings that constitute a final judgment for purposes of appeal under Section 61-1, including those that do not terminate the proceedings. The court's decision shall encompass its conclusion as to each claim of law raised by the parties and the factual basis therefor. If oral, the decision shall be recorded by a court reporter and, if there is an appeal, the trial court shall create a memorandum of decision for use in the appeal by ordering a transcript of the portion of the proceedings in which it stated its oral decision. The transcript of the decision shall be signed by the trial judge and filed in the trial court clerk's office."

*Mutual Assurance Co.*, the court concluded that the exclusion applied in an instance of sexual assault by an adult on a minor. The exclusion in the present case, however, was for 'actual or threatened abuse or molestation' and the incident involved an alleged act of sexual molestation by minors of another minor. The *Middlesex Mutual Assurance Co.* decision also discussed summary judgment and when an insurer's duty to defend arises, in addition to the discussion on the exclusion. We cannot speculate on the purpose for which the *Middlesex Mutual Assurance Co.* case was noted.

"Thus, '[w]e are . . . left to surmise or speculate as to the existence of a factual predicate for the trial court's rulings. Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the plaintiff's claims] would be entirely speculative.' " Id., 453. The Appellate Court then affirmed the judgment of the trial court without reaching the merits of the plaintiff's claim concerning the trial court's rulings on the parties' motions for summary judgment. Id., 454.

It is well established that the appellant bears the burden of providing an appellate court with an adequate record for review. Practice Book § 61-10; *Rivera* v. *Double A Transportation, Inc.*, 248 Conn. 21, 33–34, 727 A.2d 204 (1999); *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 52, 717 A.2d 77 (1998). "It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . [or] to clarify the legal basis of a ruling . . . ." (Citations omitted.) *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, supra, 53; accord *Rivera* v. *Double A Transportation, Inc.*, supra, 34; cf. C. Tait, Connecti-

cut Appellate Practice and Procedure (2d Ed. 1993) § 4.3 (a), p. 4-5.

The question we must decide is whether, under the circumstances of this case, the trial court's citation to one case, *Middlesex Mutual Ins. Co.* v. *Rand*, supra, 16 Conn. L. Rptr. 414, in support of its decision to grant the defendant's motion for summary judgment, constituted an adequate basis for appellate review of that decision. Although it would have been preferable for the trial court to have provided a more detailed explanation of its ruling—a practice that we strongly encourage—we conclude that, in light of the nature of the claims that were the subject of the trial court's rulings on the parties' motions for summary judgment, the Appellate Court had an adequate record upon which to review those rulings.

The issue presented to the Appellate Court was whether the trial court properly had rendered summary judgment for the defendant rather than the plaintiff. In order to resolve that issue, the Appellate Court was required to determine whether the defendant was obligated to defend the plaintiff in the action filed against it on behalf of Poe. The question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations of Poe's complaint with the terms of the insurance policy. See *Moore* v. *Continental Casualty Co.*, 252 Conn. 405, 409, 746 A.2d 1252 (2000). Thus, the plaintiff's appeal from the judgment of the trial court required the Appellate Court to make a de novo determination of whether the allegations of Poe's complaint "state[d] a cause of action which appear[ed] on its face to be within the terms of the policy coverage." (Internal quotation marks omitted.) *Imperial Casualty & Indemnity Co.* v. *State*, 246 Conn. 313, 324, 714 A.2d 1230 (1998). In such circumstances, the facts are not in dispute and, because the reviewing court's review

is de novo, the precise legal analysis undertaken by the trial court is not essential to the reviewing court's consideration of the issue on appeal.[10]

Furthermore, the case cited by the trial court, *Middle-sex Mutual Assurance Co.* v. *Rand*, supra, 16 Conn. L. Rptr. 414, involved the issue of whether an insurer who had issued a homeowner's policy to its insured was obligated to defend that insured in a separate civil action arising out of the insured's alleged sexual assault of a child notwithstanding a policy exclusion for bodily injury or property damage "which is expected or intended by the insured." (Internal quotation marks omitted.) Id., 415 n.2. The court in *Rand*[11] recited the applicable legal principles and concluded that, in light of the exclusionary provision, the insurer had no duty to defend or to indemnify its insured in connection with the separate action that had been filed against him for the alleged sexual assault. Id., 415. Although *Rand* is not directly on point, it addresses an analogous issue in a manner consistent with the conclusion reached by the trial court in the present case. Thus, the trial court's citation to *Rand* indicates that, in the present case, the trial court correctly identified the applicable law and concluded that the exclusionary language of the policy relieved the defendant of its obligation to defend the plaintiff under the policy. Notwithstanding the trial court's failure to provide a detailed analysis of the ratio-nale underlying its conclusion, we are not persuaded that its omission warranted a determination that the

---

[10] The defendant relies on several cases in support of its claim that the plaintiff was required to seek an articulation by the trial court to preserve the right to appellate review. In each of those cases, however, the trial court failed altogether to address a particular issue or to provide a ruling on an issue. Those cases, therefore, are inapposite.

[11] We note that *Rand* was decided by Judge Stanley, the trial judge in the present case.

record was insufficient for appellate review of the plaintiff's claim.[12]

## II

We next turn to the primary issue on appeal, namely, whether the trial court properly granted summary judgment for the defendant on the ground that it had no duty to defend the plaintiff in connection with the action brought against it on behalf of Poe. We conclude that the policy explicitly excluded from its coverage the conduct alleged in Poe's complaint and, therefore, that the trial court properly determined that the defendant had no duty to defend the plaintiff.

Before addressing the merits of the plaintiff's claim, we set forth the applicable standard of review. "The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing

---

[12] The defendant suggests that our resolution of this issue in favor of the plaintiff will discourage trial courts from explaining their decisions when "ruling on . . . issue[s] of law," a consequence that the defendant maintains should be avoided for reasons of public policy. We do not share the plaintiff's view that our resolution of this issue in favor of the plaintiff will adversely affect the nature and quality of trial court decisions insofar as they involve questions of law. Indeed, we emphasize that our determination that the record was adequate for appellate review of the plaintiff's claim in this case does not signal a retreat from the principle that the appellant bears the responsibility of providing an adequate record for review and that the failure to discharge that responsibility normally will deprive the appellant of meaningful appellate review. We conclude only that, in the particular circumstances of this case, the record was adequate for appellate review.

the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book [§ 17-46]. . . ." (Citations omitted; internal quotation marks omitted.) *Witt* v. *St. Vincent's Medical Center*, 252 Conn. 363, 368, 746 A.2d 753 (2000).

Both the plaintiff and the defendant agree that their competing motions for summary judgment gave rise to no genuine issue of material fact and, consequently, that the trial court properly determined that the parties' claims were ripe for disposition by summary judgment. Thus, the issue of whether the trial court properly rendered summary judgment for the defendant turns solely on whether the defendant had a duty to defend the plaintiff in the action brought against it on Poe's behalf.

The principles governing our determination of this issue are well settled. "[A]n insurer's duty to defend, being much broader in scope and application than its duty to indemnify, is determined by reference to the allegations contained in the [underlying] complaint. . . . The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability. . . . It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint. . . . Hence, if the complaint sets forth a cause of action within the coverage of the policy, the insurer must defend." (Citation omitted; internal quotation marks omitted.) *Springdale Donuts, Inc.* v. *Aetna Casualty & Surety Co. of Illinois*, 247 Conn. 801, 807, 724 A.2d 1117

(1999); see also *Moore* v. *Continental Casualty Co.,* supra, 252 Conn. 409. Indeed, "[i]f an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured." (Internal quotation marks omitted.) *Moore* v. *Continental Casualty Co.,* supra, 409. "On the other hand, if the complaint alleges a liability which the policy does not cover, the insurer is not required to defend." (Internal quotation marks omitted.) *Springdale Donuts, Inc.* v. *Aetna Casualty & Surety Co. of Illinois,* supra, 807.

In ascertaining the meaning of the terms of the insured's policy, we also are guided by well established principles. "The [i]nterpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy. . . . The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy. . . . The policy words must be accorded their natural and ordinary meaning . . . [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. . . . A necessary predicate to this rule of construction, however, is a determination that the terms of the insurance policy are indeed ambiguous. . . . The fact that the parties advocate different meanings of the [insurance policy] does not necessitate a conclusion that the language is ambiguous."[13] (Citations omitted;

[13] As we acknowledged in part I of this opinion, "[b]ecause the proper construction of a policy of insurance presents a question of law, the trial court's interpretation of the policy is subject to de novo review on appeal." (Internal quotation marks omitted.) *Springdale Donuts, Inc.* v. *Aetna Casualty & Surety Co. of Illinois,* supra, 247 Conn. 806.

internal quotation marks omitted.) Id., 805–806. More-over, "[t]he provisions of the policy issued by the defen-dant cannot be construed in a vacuum. . . . They should be construed from the perspective of a reason-able layperson in the position of the purchaser of the policy." (Citation omitted.) *Ceci* v. *National Indemnity Co.*, 225 Conn. 165, 168, 622 A.2d 545 (1993).

We now turn to the language of the "Abuse or Moles-tation Exclusion" endorsement contained in the policy issued to the plaintiff by the defendant. That endorse-ment expressly excludes coverage for, inter alia, bodily or personal injury "arising out of: (a) the actual or threatened abuse or molestation by anyone of any per-son while in the care, custody or control of any insured, or (b) the negligent: (i) employment; (ii) investigation; (iii) supervision; (iv) reporting to the proper authorities, or failure to so report; or (v) retention . . . of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) above." Footnote 6 of this opinion.

The plaintiff advances three related arguments in sup-port of its claim that the trial court improperly rendered summary judgment for the defendant. First, the plaintiff asserts that, because the words "abuse" and "molesta-tion" are not defined in the policy, the meaning of the policy exclusion is "hopelessly ambiguous." The plain-tiff claims that, "[a]s a result, there is no way to conclu-sively determine that the facts alleged in [Poe's] complaint constitute allegations of 'abuse' or 'molesta-tion.' " Second, the plaintiff contends that, although Poe's complaint expressly alleges that Poe had been "sexually molested" and "sexually abused," we are required to look beyond those characterizations to the specific facts alleged in Poe's complaint. According to the plaintiff, a fair reading of Poe's complaint reveals that the conduct alleged therein does not necessarily fall within the language of the policy's exclusion for

abuse or molestation. Finally, the plaintiff claims that the words "abuse" and "molestation" denote an intentionality of conduct that cannot necessarily be inferred from the conduct of the three young boys who allegedly grabbed and fondled Poe. We are not persuaded by these arguments.

According to the plaintiff, the exclusion is ambiguous because the policy does not define the words "abuse" and "molestation." In support of this contention, the plaintiff cites to the multiple definitions of those words contained in the dictionary,[14] and suggests that, because each of the two words carries several different connotations, both words must be ambiguous. We disagree. The fact that a word may have several definitions does not necessarily render it ambiguous. The policy exclusion exempts the defendant from liability for "the actual or threatened abuse or molestation by anyone of any person . . . ." Whatever other conduct that broad language may include within its purview, it certainly includes unwanted contact of a sexual nature.[15] "[W]e will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ." (Internal quotation marks omitted.) *Springdale Donuts, Inc.* v. *Aetna Casualty & Surety Co. of Illinois*, supra, 247 Conn. 809.

Other courts also have concluded that a policy exclusion for abuse or molestation is unambiguous. See, e.g., *McAuliffe* v. *Northern Ins. Co. of New York*, 69 F.3d 277, 279 (8th Cir. 1995) (policy exclusion for " 'actual

---

[14] For example, the plaintiff cites to the eleven different definitions of the word "abuse" contained in Webster's Third New International Dictionary.

[15] The words "abuse" and "molest" are commonly used to describe unwanted sexual contact. For example, one of the several definitions of "abuse" is "the act of violating sexually"; Webster's Third New International Dictionary; and one of the several definitions of "molest" is "to meddle or interfere with unjustifiably often as a result of abnormal sexual motivation." Id.

or threatened abuse or molestation' " clearly covers claim predicated on inappropriate sexual relationship between parishioner and priest); *Mount Vernon Fire Ins. Co.* v. *Hicks*, 871 F. Sup. 947, 951–52 (E.D. Mich. 1994) (policy exclusion for " 'injuries sustained [as a result of] molestation or abuse' " unambiguously covers claim predicated on assault); *Jones* v. *Doe*, 673 So. 2d 1163, 1164–66 (La. App. 1996) (policy exclusion for injury resulting from " 'actual or threatened abuse or molestation' " clearly applies to sexual assault of five year old kindergarten student by older student); *New World Frontier, Inc.* v. *Mount Vernon Fire Ins. Co.*, 253 App. Div. 2d 455, 455–56, 676 N.Y.S.2d 648 (1998) (policy exclusion for abuse or molestation " 'clear[ly] and unmistakabl[y]' " applies to allegations that five year old boy had " 'assaulted, battered and sexually molested' " four year old girl). In fact, the plaintiff has not identified any case, and we are aware of none, in which a policy exclusion for abuse or molestation has been deemed ambiguous. We conclude, therefore, that the language of the plaintiff's policy excluding abuse and molestation from coverage is clear and unambiguous.

We now must compare the allegations of Poe's complaint with the abuse or molestation exclusion of the plaintiff's policy to determine whether Poe's allegations reasonably may be read to fall within that policy exclusion. The plaintiff contends that, although Poe's complaint characterizes the offending conduct as "sexual molestation" and "sexual abuse," we should look to the specific acts alleged in Poe's complaint to determine whether those acts fall within the policy exclusion. Upon reviewing Poe's complaint, however, it is immediately apparent that the acts in question—the repeated and unwanted "grabb[ing] and fondl[ing]" of a young girl's vagina—are aptly characterized as sexual abuse and molestation. See, e.g., *Motley* v. *Maddox*, Delaware

Superior Court, Docket No. 90C-JL-82 (February 19, 1992) (1992 WL 52206) (allegations that nine year old boy sexually molested two year old girl in day care program are within policy exclusion for sexual molestation); *Jones* v. *Doe*, supra, 673 So. 2d 1164–66 (policy exclusion for abuse or molestation applies to complaint alleging that five year old student sexually assaulted by older student); *New World Frontier, Inc.* v. *Mount Vernon Fire Ins. Co.*, supra, 253 App. Div. 2d 455–56 (policy exclusion for abuse or molestation applies to complaint alleging that four year old student was sexually molested by five year old student); *Taryn E.F.* v. *Joshua M.C.*, 178 Wis. 2d 719, 721, 727, 505 N.W.2d 418 (1993) (policy exclusion for "sexual molestation" precluded coverage for claim alleging that twelve year old boy "committed various sexual assaults and physical batteries" against three year old girl).

The plaintiff also contends that the allegations of Poe's complaint necessarily involve conduct for which there exists a sexual intent or motivation, and that, based on the tender age of the three boys, it cannot be presumed that they grabbed and fondled Poe's vagina with any such purpose. We reject this argument because we disagree with the premise that the boys' conduct must have been sexually motivated in order to constitute abuse or molestation within the meaning of the policy exclusion. There is nothing in the language of the exclusion to indicate that the alleged abuse or molestation must be sexually motivated or calculated to arouse the person or persons involved in the offending conduct; the boys' nonconsensual grabbing and fondling of Poe fall within the plain meaning of the words "abuse" and "molestation" irrespective of the boys' subjective state of mind. We therefore reject the plaintiff's claim to the contrary.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.