[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff Joseph Przybyloski has filed the subject action against the defendants Barco Auto Leasing ("Barco") and Clarendon National Insurance Company ("Clarendon") asserting a claim for benefits pursuant to the uninsured motorist provision of an insurance policy issued by Clarendon to Barco. The defendants Barco and Clarendon have moved for summary judgment asserting that the plaintiff is not entitled as a matter of law to uninsured motorist coverage under the provisions of the insurance policy.
In his complaint, the plaintiff alleges that, on April 16, 1998, he was injured in Waterbury, Connecticut in an accident with a motor vehicle driven by a motorist who was uninsured. At the time of the accident, the plaintiff was an employee of St. Vincent DePaul Society of Waterbury, Inc. ("St. Vincent") and operating a motor vehicle leased by St. Vincent from Barco. At the time of the accident, the motor vehicle driven by the plaintiff was registered in Connecticut. During the relevant time period, Barco maintained a policy of insurance with Clarendon which included uninsured motorist coverage.
Barco asserts that the plaintiff may not maintain a cause of action against it for uninsured motorist benefits because Barco was merely the owner of the motor vehicle operated by the plaintiff and not the provider, either through self-insurance or an insurance policy, of any uninsured motorist coverage. At oral argument on Barco's motion for summary judgment, the plaintiff conceded that summary judgment should enter in favor of Barco.
Clarendon argues that its motion for summary judgment should be granted because the terms of the insurance policy that it issued to Barco provided that uninsured motorist coverage applied only to accidents which occurred in the state of New York. Since the plaintiffs accident occurred in Connecticut, he is not entitled to seek benefits under the insurance policy issued by Clarendon.
The plaintiff contends the insurance policy issued by Clarendon to CT Page 641 Barco contained a supplementary endorsement which provided uninsured motorist coverage for accidents occurring in the United States and was not limited to collisions taking place in New York. The plaintiff further asserts that Clarendon was statutorily required by Connecticut law to provide insurance coverage for accidents occurring in the United States and, therefore, Clarendon's policy with Barco must be read to cover the plaintiffs motor vehicle accident in Waterbury, Connecticut.
For the following reasons, the court agrees with the defendant Clarendon that it is entitled to the entry of summary judgment.
"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Scrapchansky v. Plainfield,226 Conn. 446, 450 (1993). In ruling on a motion for summary judgment, the court's function is hot to decide issues of material fact, but rather, to determine whether any such issues exist. Cortes v. Cotton,31 Conn. App. 569, 575 (1993). [I]n deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Johnson v. Meehan, 225 Conn. 528,535 (1993). Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . .Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578 (1990)." (Internal quotation marks omitted.) Warner v. Lancia, 46 Conn. App. 150,158 (1997). See also Practice Book § 17-49. The test is whether a party would be entitled to a directed verdict on the same facts. Suarezv. Dickmont Plastics Corp., 229 Conn. 99, 105-106 (1994).
In support of its motion for summary judgment, Clarendon has submitted the insurance policy which it issued to Barco Lincoln Mercury, Inc. and which named the defendant Barco Auto Leasing as an additional insured. The documents submitted as the insurance policy included a declarations page and two endorsements which are pertinent to the issues presented by the motion for summary judgment. One endorsement is entitled "Uninsured Motorist Endorsement — New York" and provides:
 We, the company, agree with you, as the named insured, in return for the payment of the premium for this coverage to provide you with Uninsured Motorists (UM) Coverage, subject to the following terms and conditions. . . . 3. Territory. The coverage provided by this UM endorsement applies only to accidents which occur within the State of New York.
The second endorsement is entitled "New York Supplementary Uninsured CT Page 642 Motorists Endorsement" and it provides:
 We, the company, agree with you, as the named insured, in return for the payment of the premium for this coverage to provide Supplementary Uninsured Motorists (SUM) coverage, subject to the following terms and conditions. . . . III. SUM Coverage Period and Territory. This SUM coverage applies only to accidents which occur: in the United States, its territories, or possessions, or Canada.
Finally, the declarations page states "This policy provides only those coverages where a charge is shown in the premium column below." The notation "INCL" is shown in the premium column for Uninsured Motorists Coverage and the notation "N/A" is shown in the premium column for Supplementary Uninsured Motorists (SUM) Coverage.
The standard for interpreting an insurance policy is well-established. "The interpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy. The determinative question is the intent of the parties, that is, what coverage the insured expected to receive and what the insurer was to provide, as disclosed by the provisions of the policy. It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy. The policy words must be accorded their natural and ordinary meaning and any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. A necessary predicate to this rule of construction, however, is a determination that the terms of the insurance policy are indeed ambiguous. The fact that the parties advocate different meanings of the insurance policy does not necessitate a conclusion that the language is ambiguous. (Citations omitted; internal quotation marks omitted.)Community Action for Greater Middlesex County, Inc. v. American AllianceIns. Co., 254 Conn. 387, 399, (2000).
"Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact, where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." Levinev. Massey, 232 Conn. 272, 277 (1995).
The plaintiff asserts that the endorsement entitled "New York Supplementary Uninsured Motorists Endorsement" which provides for uninsured motorist coverage for accidents anywhere in the United States is an operative part of the policy issued by Clarendon and available to compensate the plaintiff in this case. The plaintiffs position however is CT Page 643 not supported by the language of the endorsement or the other relevant provisions of the policy.
The supplementary uninsured motorist endorsement states that Clarendon agrees to provide supplementary uninsured motorist coverage ". . . .in return for the payment of the premium for this coverage. . . ." The declarations page expressly limits coverage to those coverages where a charge is shown in the premium column.[1] The premium column for the supplementary uninsured motorist coverage contains the notation "N/A." Such an abbreviation is generally understood to mean "not applicable." See The American Heritage Dictionary (Second College Edition 1985). In contrast, the premium column on the declarations page for the uninsured motorist endorsement contains the notation "INCL," which is the accepted abbreviation for "including." or, in this case, "included." Ibid. Read together, the provisions of the Clarendon insurance policy clearly show that it was the intent of the parties to include coverage under the uninsured motorist endorsement and not to include coverage under the supplementary uninsured motorist endorsement. As a result, uninsured motorist coverage under the policy is limited to accidents that occur in New York.
The plaintiff further contends that Connecticut statutes mandate that the Clarendon insurance policy be read to include coverage for accidents occurring anywhere in the United States. Specifically, the plaintiff argues that Clarendon is required by General Statutes § 38a-372 in combination with §§ 38a-371, 38a-334 and 38a-336 to provide insurance coverage within the territorial limits of the United States. Since the uninsured motorist coverage issued by Clarendon to Barco is limited to accidents occurring in New York, the plaintiff argues that the policy should be reformed to cover the United States.
Section 38a-372 provides that "Every insurance company authorized to transact the business of private passenger motor vehicle liability insurance in this state shall file with the Insurance Commissioner as a condition of its continued transaction of such business within this state a form approved by the commissioner declaring that its policies shall be deemed to provide the security required by section 38a-371." Section 38a-371 mandates that "the owner of a private passenger motor vehicle required to be registered in this state shall provide and continuously maintain throughout the registration period security in accordance with sections 38a-334 to 38a-343, inclusive." Section 38a-71 (a)(1). Section 38a-336 states that "each automobile liability insurance policy" shall provide uninsured motorist coverage in accordance with regulations established by the Insurance Commissioner. Section 38a-336 (a)(1). Finally, those regulations require insurance policies to provide coverage within the territorial limits of the United States. Regs., Conn. State CT Page 644 Agencies § 38a-334-8.
The plaintiff piggy backs on each of these statutes to reach his proposition that Connecticut's statutes require an insurance company authorized to transact business in Connecticut to provide uninsured motorist coverage for accidents occurring throughout the United States. The plaintiff, however, misconceives the statutory scheme in Connecticut for the provision of uninsured motorist coverage. It is the owner of the motor vehicle, not the insurance company, that is mandated by statute with the responsibility to provide appropriate uninsured motorist insurance. General Statutes § 38a-371. See Platcow v. Yasuda Fire Marine Ins. Co., 59 Conn. App. 47 (2000).
In Platcow, the plaintiff administrator of the estate sought to recover uninsured motorist benefits allegedly due under an excess liability policy issued by the defendant insurer to the lessor of a leased motor vehicle. The plaintiff claimed that the defendant insurance company was obligated by Connecticut statutes to provide uninsured motorist coverage in the same amount as the liability coverage and, since the policy provided by the defendant insurance company provided $1 million in excess liability coverage, it should be deemed to provide $1 million in uninsured motorist coverage.
The Appellate Court held that the Connecticut statutory scheme does not require an insurance company which issues an insurance policy to a lessor of a motor vehicle to extend uninsured motorist coverage to a lessee of the vehicle. Id., 52-57. Since the insurance company provided insurance coverage only to the lessor, it had no statutory obligation to provide uninsured motorist coverage to a lessee. Id., 56. The court in Platcow emphasized that, read together, Connecticut's insurance statutes impose the duty to supply uninsured motorist coverage on the owner of a motor vehicle, not on the lessor or the lessor's insurance company. Id., 55. The Appellate Court noted that, since Connecticut insurance regulations permit an insurer of a lessor to exclude entirely any liability coverage for customers of the lessor, Regs., Conn. State Agencies § 38a-334-5
(c) (11) (B), and mandatory uninsured motorist coverage operates in parity with liability insurance coverage, no authority exists for the claim that an insurer of a lessor is mandated to provide uninsured motorist coverage to customers of a lessor. Id., 56 n. 16.
The Appellate Court in Platcow specifically addressed the interplay between § 38a-336, § 38a-371 and the regulations promulgated by the Insurance Commissioner pursuant to § 38a-334. The court determined that an insurer is not statutorily obligated to maintain uninsured motorist coverage for a lessee, notwithstanding the language of § 38a-336 (a) which requires "each automobile liability insurance CT Page 645 policy" to provide uninsured motorist coverage in accordance with regulations adopted pursuant to section 38a-344, because, when read together, the insurance statutes, particularly § 38a-371, place that responsibility on the owner of the motor vehicle. Id., 54-56. While the court did not expressly consider § 38a-372, its analysis of the "panoply of interrelated statutory provisions" applies equally to that provision. See Infinity Insurance Company v. Merrian, Superior Court, judicial district of New Haven at Meriden, Docket No. CV98-0261511 (March 9, 1999) (Beach, J.) (In determining that § 38a-372 does not require the provision of minimum coverage for claims for bodily injury by an insurance company which issued an insurance policy in Florida to a Florida resident for a vehicle registered in Florida, the court noted that Connecticut's insurance statutes place the responsibility to provide minimum security on the owner of the vehicle.)
Accordingly, Clarendon has no statutory duty to provide uninsured motorist coverage to the plaintiff as lessee of the motor vehicle. The statutory obligation to provide such insurance is imposed on Barco, as the owner of the motor vehicle.[2] General Statutes § 38a-371.Platcow v. Yasuda Fire Marine Ins. Co., supra, 59 Conn. App. 55.
Barco, fulfilled its statutory obligation to provide appropriate uninsured motorist coverage by requiring its lessee, St. Vincent, to obtain such coverage, which St. Vincent did through the defendant Hartford Roman Catholic Diocesan Corporation. As a result, uninsured motorist coverage exists from which the plaintiff may seek compensation for his injuries.[3] "[T]he purpose of uninsured motorist coverage is neither to guarantee full compensation for a claimant's injuries nor to ensure that the claimant will be eligible to receive the maximum payment available under any applicable policy. . . . Rather, the public policy of § 38a-336 is to give a personal injury claimant access to insurance protection to compensate for the damages that would have been recoverable if the underinsured motorist had maintained an adequate policy of liability insurance." (Citations omitted; internal quotation marks omitted.) Florestal v. Government Employees Ins. Co., 236 Conn. 299, 310
(1996). The letter and purpose of the Connecticut statutes governing uninsured motorist coverage have been fulfilled by the provision of uninsured motorist coverage by the lessee as required by the owner of the motor vehicle.
In light of the above, the defendants Barco Auto Leasing and Clarendon National Insurance Company have shown that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law. Accordingly, their motion for summary judgment is hereby granted. CT Page 646
BY THE COURT
 ___________________ Jon M. Alander